His Honor granted the motion, and this was an appeal from his decision. The case sufficiently appears from the following opinion of this court, delivered by
Earle, J.
The object- of the proceeding in this case, is to restrain the sheriff from levying a fine, imposed on the relator for not attending a militia muster, on the ground that he was exempted from ordinary militia duty, by having held a commission seven years ; and the court that imposed the fine, decided against law, when it held that he was not so exempt. Mr. Justice Bay granted the prohibition, for reasons which he has assigned in his report; and the case comes before this court, by appeal, on a motion to reverse his judgment.
The exemption which is claimed by the relator, is supposed to be contained in the Act of 1794, entitled “An Act to organize the militia throughout the State of South Carolina, in conformity with the Act of Congress.’ And the question depends on the construction of that part of the Act, which excuses certain persons, and classes of persons, from performing ordinary duty. The section is in these words. “And be it further enacted, that persons of the following professions and descriptions, shall be excused from militia duty, except in times of invasion or alarm, to wit: the Lieutenant Governor for the time being, members of both branches of the Legislature, and their officers,” (enumerating many other classes of persons,) “and all militia officers who have held their commissions for seven years.” It is on the construction of this latter clause, that the question arises ; and the proposition on behalf of the .relator is, that this provision is prospective as well as retrospective in its operation, and exempts from ordinary service not only such officers as had then held their commissions seven years, but also such as should, at any time after-wards, hold commissions for that term.
The question depends more on grammatical rules, than on legal principles, and is one of philological, rather than of judicial, construction. In the decision of it, we derive very little aid from those general rules which have been suggested by reason, reflection and experience, and *18 being ratified by the approbation of ages, are now incorporated with the body of the law, and serve to guide us in seeking the intention of the Legislature, where the terms of a statute are equivocal, and the meaning doubtful. The fundamental principle on this subject, is, that the intention of the Legislature is the meaning of the statute; and when ascertained, will always prevail over the literal sense of the terms. This intention is to be deduced from the whole context of the statute, and if the terms are ambiguous, may be collected from extraneous considerations, as ¡the occasion and purpose of the statute. “ And,” says Ch. Kent, “ the intention is to be taken or presumed, according to what is consonant to Reason and a good discretion.”' But as this clause has not been enacted to provide any remedy for an existing evil, or to suppress any species of fraud, as it creates no penalty, and divests no tight, we derive very little assistance from those general rules of construction, which are applicable to statutes intended for such purposes. In seeking, therefore, the true meaning of the clause in question, we shall be confined mainly to a consideration of its grammatical structure, aided by what is declared to be the purpose of the Act, and by what we know to have been the existing .condition of the militia.
The Act of Congress, passed in 1792,'had already provided, that every free, able bodied white male citizen of the respective States, residents therein, of the age of 18 years, and under the age of 45 years, should be .enrolled in the militia, with such exceptions as are made in that Act, and such as might be made by the several States. In 1794, the Legislature of this State pass.ed the Act in question, “to organize the militia, in conformity with the Act of Congress.” This Act likewise requires to be enrolled and to perform militia duty, all citizens, all white apprentices and male servants, and aliens, with such exceptions as are included in the section under consideration, “and all militia officers who have held their commissions for seven years,” who are excused, except in times of invasion and alarm. Th'e last section of the Act repeals “ all laws heretofore enacted in this State, respecting the militia.” There was then, at the time of- the passing of this Act, and had been long before, an organized system of militia in full operation, under laws of the State, up to that time of force, but which were then repealed. Under the operation of these laws, there must have been a large number of persons who had served as commissioned officers seven years, and some who had served a portion of their time during the progress of the war, although they may not have been actually then in commission. The Act provided for the repeal of previous laws, for the formation anew of companies, regiments, brigades and divisions, and for the election and appointment of all officers, *19 from an ensign to a major general. Of coarse all the militia officers then iri commission, tinder the previous laws, were thrown out of commission. Such as were then in office, and had held their commissions' seven years; and also such officers as had at any time held commissions seven years; were obviously embraced, and were intended to bé embráced, within the terms of the exception under consideration. In consequence of their .former services, and as to those then in office, in consequence of their being deprived of their commissions; they were excused from ordinary militia duty afterwards. And it was right that they shoüld'be so excused; It was certainly no more than a reasonable indulgence. And the Legislature has employed appropriate terms to convey that meaning, and to express that intention, and such as do not appear to be well adapted to’ convey any other or further meaning: “All militia officers who have held commissions,” that is to say, all such persons as are now officers, or have been heretofore, and have now, or formerly, been iri commission' seven years. There was then a class of persons, to whom the exception did apply, giving to the terms' used their natural and ordinary signification ; in whose behalf it was reasonable and proper that such an exception should have been made; and the clause has frill and effectual operation, without any strained or forced construction. For the purpose now supposed, the terms are explicit and without ambiguity. The class of persons is designated as then existing, and the qualificátiori to entitle them to the exemption, as having been already acquired. It is noVv attempted, however, in behalf of the relator; to give the clause a prospective operation ; to extend its meaning so as to embrace all such officers aS should afterwords hold commissions seven 'years. “ The words of a statute,” says Ch. Kent, “ are to be taken in their natural and ordinary signification and import.” Of course the grammatical structure of the sentence is to be regarded. We are not to suppose that thé Legislature Was ignorant of the rules of grammar, or indifferent to them ; that they did nut know the difference between the expressions “ have held,” and “ shall have held,” or “ shall hereafter hold;” That the Legislature did look to the force of terms, as having reference to the past, the present, and the ■ future; and used appropriate words to make the distinction, and intended, in the same section, to provide for persons who might afterwards become entitled to the benefit of the exception, is obvious, from a clause immediately preceding that under consideration. I refer to that which excuses ’ “ three white men to each forge, and five to each furnace, erected or to be erected.” Had the words, “ shall have held,” been used, there would not have been wanted the authority of Baird vs. Rowan, from 9 Peters, 301, to shew that the benefit of the exception might have been claimed, at any future time, when an officer had acquired the qualification, by *20 having held a commission seven years. Such would have been the obvious meaning, without resorting to rules of construction. Can the terms actually employed, on any sensible construction, be made to convey the meaning now claimed for them 1 That in their natural and ordinary signification and import, they apply to officers who had been in commission before, and such as were so at the passing of the Act, is not, and cannot be, doubted. Can the same words, without vaiiation of mood or tense, be made to convey a meaning in relation both to the past and the future 1 We think not. It must be borne in mind, that the relator claims the benefit, by an exception to a general law, intended to operate, by express provision, upon all classes and all individuals of the community, of an exemption from the performance of a duty required of all, except such as are excused by like express provision. He must therefore make out his claim to the exemption, by shewing that he comes within the terms of the clause by which it is allowed. Has he shewn this ? We think it clear, from what has been said, that the terms of the clause, in their natural and ordinary import, do not embrace his case. If there had been, at the lime of the passing of the Act, no class of officers or persons in being, to whom the terms of the exception could apply, and the clause would have been void of meaning and inoperative, without the construction contended for, then, ut res magis valent quam pereat, we should have been disposed to give it that construction, however different from its obvious import. This not being the case, however, as we think has already been made apparent, we must look beyond the terms of the clause, although they are neither equivocal nor ambiguous ; and inquire if the claim of the relator is aided by a consideration of extraneous matters; whether, by having regard to the occasion and purpose of enacting the law, and making the exception, and looking to the existing circumstances of the country, it can be ascertained to have been the intention of the Legislature to allow the exemption which is now claimed. The purpose of the Act was to organize, anew, an effective militia, in which all citizens were to be enrolled. We have shewn that it was consonant to reason and a good discretion, to excuse from service such officers as had then held commissions seven years. The argument is, that men were unwilling to accept commissions in the militia; that the equipment of an officer required great expense; and that the duties were arduous and disagreeable; therefore, it was necessary to hold out the prospect of future exemption from service, as an inducement to persons to incur this expense and to perform this duty. We are not of that opinion ; we think rather, that always in this State, and especially at that early period after the revolution, in which the militia had rendered such important services, and gained so *21 much renown, a command in the militia was an object of ambition and pursuit to all who sought to obtain influence among their fellow citizens. It was one of the avenues to distinction, most accessible to every one, most frequently and zealously pursued. Nor do we believe that it was then deemed necessary to hold out the supposed inducement to prevail on men to accept commissions. To bear arms in the country’s service, even in the militia, ought to be the boast of every freeman. The borior'and distinction conferred by holding a command ought to be regarded as an ample compensation for the expense and trouble ; and the officer who does not so consider it, and who looks forward to future exemption as his reward, ought to lay down his commission, for he can hardly be expected to perfoim the duties of his station, with becoming zeal or suitable ability.
It is argued, also, inasmuch as the purpose of all militia service is to communicate and diffuse a knowledge of tactics and discipline, that one who has held a commission seven years, and has been thus long engaged in teaching others, can no longer stand in need of the drill. And it is therefore reasonable to suppose, that the Legislature intended to excuse him. But it should not escape consideration, that one who has acquired so much knowledge and skill as an officer, would be eminently useful to his fellows in the ranks ; as the most effectual mode of training new levies, is to distribute among them well trained veterans.
When it is considered, that forty-two years have passed since the Act of 1794, and that the term of seven years would six times have elapsed, if it be supposed that the whole body of officers had acted on the construction now urged, had held their commissions, by way of bargain, seven years, and then had resigned, claiming the benefit of the exemption, the number of exempts would be enormous, and would alone suffice to show, that such a construction is neither consonant to reason, nor a sound discretion.
It is supposed that the argument for the relator derives aid from contemporaneous exposition ; that the construction now contended for, has generally obtained among the military. That this is true, to some extent, and especially of late years, we are informed, and admit. But we have also learned, through some of the oldest and earliest general officers, that the interpretation which we now put on the Act, is that which was regarded as the true one, among those most conversant with the subject at the time. But whatever may have been the construction and exposition, then or since, we have now construed the Act according to the natural import of the terms, and according to what we believe to have been the intention of the Legislature.
The view we have presented renders a discussion of the other ques- *22 tions involved unnecessary, especially as it has the coneuirence of the whole Court.
The motion here made is granted, and the judgment of the Court below is reversed.
Justices Richardson, O’Neall and Botler, and Chancellors Johnson and Johnston, concurred.